1   Matthew C. Bernstein, Bar No. 199240
    MBernstein@perkinscoie.com
2   PERKINS COIE LLP
    1888 Century Park E., Suite 1700
3   Los Angeles, CA 90067
    Telephone:  310.788.9900
4   Facsimile:  310.788.3399

5   Patrick J. McKeever, Bar No. 268763
    PMcKeever@perkinscoie.com
6   PERKINS COIE LLP
    11452 El Camino Real, Suite 300
7   San Diego, CA  92130-2594
    Telephone:  858.720.5700
8   Facsimile:  858.720.5799

9   Attorneys for Defendant
    NETFLIX, INC.

10                  UNITED STATES DISTRICT COURT

11                  CENTRAL DISTRICT OF CALIFORNIA

12                  (SOUTHERN DIVISION - SANTA ANA)

13

14

15   UNILOC 2017 LLC,                    Case No. 8:18-cv-02055-JVS-DFMx

16                    Plaintiff,         **DEFENDANT NETFLIX, INC.'S
                                         NOTICE OF MOTION AND
16          v.                           MOTION TO DISMISS FIRST
                                         AMENDED COMPLAINT;
17   NETFLIX, INC.,                      MEMORANDUM OF POINTS AND
                                         AUTHORITIES IN SUPPORT
18                    Defendant.         THEREOF**

19
                                         Date:      April 15, 2019
20                                       Time:      1:30 p.m.
                                         Judge:     Honorable James V. Selna
21                                       Room:      10C

22
                                         Amended Complaint Filed: March 4,
23                                       2019

24

25

26

27

28

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Please take notice that on April 15, 2019 at 1:30 p.m., or as soon thereafter as counsel may be heard, in the Courtroom of the Honorable James V. Selna, 411 West Fourth Street, Court Room 10C, Santa Ana, CA 92701, Defendant Netflix, Inc. ("Netflix"), by and through its attorneys, will and hereby does move this Court to dismiss Plaintiff Uniloc 2017 LLC's First Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on March 7, 2019.

DATED: March 18, 2019

**PERKINS COIE LLP**

By: */s/ Patrick J. McKeever*
Patrick J. McKeever

Attorneys for Defendant
NETFLIX, INC.

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ....................................................................................... 1

II.  FACTUAL BACKGROUND ...................................................................... 2

III. LEGAL STANDARDS .............................................................................. 2

     A.   Dismissal Under Rule 12(b)(6) ......................................................... 2

     B.   Ineligible Subject Matter Under 35 U.S.C. § 101 ............................ 3

IV.  ARGUMENT ............................................................................................. 5

     A.   The '609 Patent Claims Patent-Ineligible Subject Matter .................. 5

          1.   The '609 Patent is Directed to an Abstract Idea ........................ 6

          2.   The '609 Patent Lacks an Inventive Concept ............................ 7

          3.   Uniloc Has Failed to Plead Facts Sufficient to Defeat a
               Motion to Dismiss the '609 Patent ........................................ 10

     B.   The '229 Patent Claims Patent-Ineligible Subject Matter ................ 12

          1.   The '229 Patent is Directed to an Abstract Idea ...................... 14

          2.   The '229 Patent Lacks an Inventive Concept .......................... 15

          3.   Uniloc Fails to Plead Facts Sufficient to Defeat a Motion
               to Dismiss the '229 Patent ..................................................... 18

     C.   The '005 Patent Claims Patent-Ineligible Subject Matter ................ 18

          1.   The '005 Patent is Directed to an Abstract Idea ...................... 19

          2.   The '005 Patent Lacks an Inventive Concept .......................... 21

          3.   Uniloc Fails to Plead Facts Sufficient to Defeat a Motion
               to Dismiss the '005 Patent ..................................................... 24

V.   CONCLUSION ......................................................................................... 25

-i-

1

# TABLE OF AUTHORITIES

2

Page

3

CASES

4

*Affinity Labs of Tex., LLC v. DIRECTV, LLC,*
5
    838 F.3d 1253 (Fed. Cir. 2016) ...................................................................passim

6

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l.,*
7
    573 U.S. 208 (2014) .....................................................................................passim

8

*Ashcroft v. Iqbal,*
9
    556 U.S. 662 (2009) ...................................................................... 2, 3, 12, 18

10

*Automated Tracking Sols., LLC v. Coca-Cola Co.,*
    723 F. App'x 989 (Fed. Cir. 2018) ....................................................................... 4
11

12

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ............................................................................................ 2
13

14

*BSG Tech LLC, v. Buyseasons, Inc.,*
    899 F.3d 1281 (Fed. Cir. 2018) ......................................................15, 16, 22, 24
15

16

*BuySAFE v. Google, Inc.,*
    765 F.3d 1350 (Fed. Cir. 2014) ........................................................................ 17

17

*Cellspin Soft, Inc. v. Fitbit, Inc.,*
18
    316 F. Supp. 3d 1138 (N.D. Cal. 2018) ............................................................. 5

19

*Cellular Commc'ns Equip. LLC v. AT&T Inc.,*
    No. 2:15-cv-00576-RWS-RSP, 2017 WL 2984074 (E.D.
20
    Tex. June 27, 2017) ............................................................................................. 5

21

22

*Clarilogic, Inc. v. FormFree Holdings Corp.,*
    681 F. App'x 950 (Fed. Cir. 2017) ................................................................... 21

23

*Cleveland Clinic Found. v. True Health Diagnostics LLC,*
24
    859 F.3d 1352 (Fed. Cir. 2017) .............................................................4, 15, 23

25

*Consumer 2.0, Inc. v. Tenant Turner, Inc.,*
26
    343 F. Supp. 3d 581 (E.D. Va. 2018) ................................................................. 5

27

28

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3    *Content Extraction & Transmission LLC v. Wells Fargo Bank,*
4        *N.A.,*
        776 F.3d 1343 (Fed. Cir. 2014) ............................................................... 4
5
6    *Elec. Power Grp., LLC v. Alstom S.A.,*
        830 F.3d 1350 (Fed. Cir. 2016) ................................................. 3, 20, 22
7
8    *Fayer v. Vaughn,*
        649 F.3d 1061 (9th Cir. 2011) ........................................................ 3, 12
9
10   *Genetic Techs. Ltd. v. Merial L.L.C.,*
        818 F.3d 1369 (Fed. Cir. 2016) ............................................................... 4
11
12   *In re TLI Commc'ns LLC Patent Litig.,*
        823 F.3d 607 (Fed. Cir. 2016) ............................................................... 7
13
14   *Intellectual Ventures I LLC v. Erie Indem. Co.,*
        850 F.3d 1315 (Fed. Cir. 2017) ............................................................... 7
15
16   *Intellectual Ventures I LLC v. Symantec Corp.,*
        838 F.3d 1307 (Fed. Cir. 2016) ............................................................. 24
17
18   *Internet Patents Corp. v. Active Network, Inc.,*
        790 F.3d 1343 (Fed. Cir. 2015) ............................................................... 3
19
20   *Interval Licensing LLC v. AOL, Inc.,*
        896 F.3d 1335 (Fed. Cir. 2018) ..................................................... 20, 21
21
22   *Maxell, Ltd. v. Fandango Media, LLC,*
        No. CV 17-07534 AG, 2018 WL 4502492 (C.D. Cal. Sept.
        11, 2018) ............................................................................................... 4
23
24   *Maxon, LLC v. Funai Corp., Inc.,*
        726 F. App'x 797 (Fed. Cir. 2018) ........................................................ 4
25
26   *Mayo Collaborative Servs. v. Prometheus Labs., Inc.,*
        566 U.S. 66 (2012) ...................................................................... passim
27
     *Mendiondo v. Centinela Hosp. Med. Ctr.,*
        521 F.3d 1097 (9th Cir. 2008) ............................................................... 2
28

NOTICE OF MOTION AND MOTION TO DISMISS FAC

# TABLE OF AUTHORITIES
### (continued)

Page

*OIP Techs. Inc. v. Amazon.com, Inc.*,
   788 F.3d 1359 (Fed. Cir. 2015) ........................................................................ 4, 9

*RecogniCorp, LLC v. Nintendo Co., Ltd.*,
   855 F.3d 1322 (Fed. Cir. 2017) .................................................................... 12, 18

*SAP Am., Inc. v. InvestPic, LLC*,
   898 F.3d 1161 (Fed. Cir. 2018) ............................................................................ 25

*Secure Mail Sols. LLC v. Universal Wilde, Inc.*,
   169 F. Supp. 3d 1039 (C.D. Cal. 2016) ................................................................ 4

*Synopsys, Inc. v. Mentor Graphics Corp.*,
   839 F.3d 1138 (Fed. Cir. 2016) ........................................................................... 11

*TriPlay, Inc. v. WhatsApp Inc.*,
   C.A. No. 13–1703–LPS–CJB, 2018 WL 1479027 (D. Del.
   Mar. 27, 2018) ....................................................................................................... 5

*TS Patents LLC v. Yahoo! Inc.*,
   731 F. App'x 978 (Fed. Cir. 2018), *petition for reh'g en
   banc denied*, No. 2017-2625 (Fed. Cir. Sept. 25, 2018) ...................................... 4

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
   874 F.3d 1329 .......................................................................................... 11, 17, 20

*Ultramercial, Inc. v. Hulu, LLC*,
   772 F.3d 709 (Fed. Cir. 2014) ............................................................... 7, 8, 9, 14

*Uniloc USA, Inc. v. HTC Am., Inc.*,
   No. C17-1558JLR, 2018 WL 3008870 (W.D. Wash. June
   15, 2018) ................................................................................... 5, 12, 18, 25

*Voit Techs., LLC v. Del-Ton, Inc.*,
   No. 2018-1536, 2019 WL 495163 (Fed. Cir. Feb. 8, 2019) ............................... 12

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

In 2014, the Supreme Court clarified the law of patent eligibility in *Alice Corporation v. CLS Bank*, holding that an abstract idea implemented on a general-purpose computer is not eligible for a patent under 35 U.S.C. § 101.  Since that time, courts across the nation have invalidated scores of software patents for failing to pass muster under *Alice*.  The *Alice* test requires two steps:  first, the claims of the patent are analyzed to determine whether they are directed to an abstract idea.  If so, the claims are then analyzed to determine whether they contain an inventive concept that transforms the claims into a patent-eligible application.  The Uniloc patents at issue in this motion fail both steps and are thus ineligible.

The '609 patent claims the concept of timing elapsed media playback.  People have been timing events since Galileo timed his pendulum, and timing media playback instead of pendulums is no different.  To this abstract idea, Uniloc adds only conventional computer functionality, such as measuring the time with a generic program, transmitting timing data across a network, and storing the data for later retrieval.  These conventional features do not constitute an inventive concept, and the '609 patent is thus ineligible for patenting.

The '229 patent is directed to the abstract idea of chunking an image.  Chunking is a widely used simplification technique that deals with things in chunks rather than individually.  The '229 patent combines that abstract idea with an admittedly conventional technique used to separate the background from the foreground in an image.  The claims recite nothing inventive and are thus ineligible.

The '005 patent is directed to the abstract idea of concurrent motion estimation.  Making matters worse, the '005 patent attempts to cover all possible ways of accomplishing concurrent motion estimation rather than any purportedly inventive approach described in the patent.  The claims of the '005 patent are thus drawn to the abstract idea itself and are patent-ineligible.

In response to Netflix's original motion to dismiss, Uniloc filed an amended complaint with additional statements from the patent specifications and bald assertions as to inventive concepts that persons of ordinary skill in the art would purportedly recognize in the patents.  No amount of conclusory legal allegations can generate an inventive concept where none actually exists in the patent claims, however, and Uniloc's allegations do not make the claims patent eligible.

## II.   FACTUAL BACKGROUND

Uniloc filed this lawsuit on November 17, 2018, accusing Netflix of infringing U.S. Patent Nos. 8,407,609 (the "'609 patent"); 6,584,229 (the "'229 patent"); and 6,519,005 (the "'005 patent") (collectively, "patents-in-suit").  McKeever Decl., Ex. C ('609 patent); Ex. D ('229 patent); Ex. E ('005 patent).  Netflix moved to dismiss and Uniloc filed an amended complaint on March 4, 2019.  McKeever Decl., Ex. B ("FAC").  Uniloc alleges Netflix infringes the '609 patent by measuring and storing the time that a user watches a video.  *Id.* at ¶¶ 93-106.  Uniloc alleges that Netflix infringes the '229 patent by encoding video using the VP9 video coding format.  *Id.* at ¶¶ 61-78.  Uniloc further alleges that Netflix infringes the '005 patent by encoding video in a manner that is compliant with the H.264 standard.  *Id.* at ¶¶ 32-45.

## III.   LEGAL STANDARDS

### A.   Dismissal Under Rule 12(b)(6)

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is proper where a complaint lacks (1) a cognizable legal theory or (2) sufficient facts to support a cognizable legal theory.  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  Under the heightened pleading standards of *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  Labels, conclusions, and "a formulaic recitation of the elements of a cause of action will not do."  *Id.* at 555.  Similarly, courts "are

-2-

1   not bound to accept as true a legal conclusion couched as a factual allegation."

2   *Iqbal*, 556 U.S. at 678; *see also Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir.

3   2011) (Courts need not "assume the truth of legal conclusions merely because they

4   are cast in the form of factual allegations.").

5   **B.    Ineligible Subject Matter Under 35 U.S.C. § 101**

6         Valid patents may be issued only for a "new and useful process, machine,

7   manufacture, or composition of matter, or any new and useful improvement

8   thereof."  35 U.S.C. § 101.  Laws of nature, natural phenomena, and—importantly

9   for this case—abstract ideas are not patentable.  *Mayo Collaborative Servs. v.*

10  *Prometheus Labs., Inc.*, 566 U.S. 66, 70 (2012); *Alice Corp. Pty. Ltd. v. CLS Bank*

11  *Int'l.*, 573 U.S. 208, 216 (2014).

12        In *Alice*, the Supreme Court outlined a two-prong framework for determining

13  whether claimed subject matter is patentable under § 101.  573 U.S. at 217-18

14  (citing *Mayo*, 566 U.S. at 77-79).  At step one, the court determines whether a claim

15  is directed to an abstract idea.  *Id.* at 217.  To make this first determination, courts

16  consider the "focus" or "basic character" of the claims.  *See Elec. Power Grp., LLC*

17  *v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016); *Internet Patents Corp. v.*

18  *Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015).

19        If the claims are found to be directed to an abstract idea, the second step

20  requires determining whether the claims include an "inventive concept," that is,

21  some additional element or combination of elements "sufficient to ensure that the

22  patent in practice amounts to significantly more than a patent upon the [ineligible

23  concept] itself."  *Alice*, 573 U.S. at 217-18 (quoting *Mayo*, 566 U.S. at 72-73)

24  (alterations in original).  In *Alice*, the Supreme Court explained that "wholly

25  generic computer implementation is not generally the sort of 'additional featur[e]'

26  that provides any 'practical assurance that the process is more than a drafting effort

27  designed to monopolize the [abstract idea] itself.'"  *Id.* at 223-24 (quoting *Mayo*,

28  556 U.S. at 77) (alterations in original).  If the claims lack an inventive concept

-3-

"sufficient to 'transform' the claimed abstract idea into a patent-eligible application," they are patent-ineligible and invalid under § 101.  *Id.* at 221 (quoting *Mayo*, 556 U.S. at 72, 79).

Where claims are substantially similar and linked to the same abstract idea, courts may focus their analysis on a representative claim.  *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017); *Maxell, Ltd. v. Fandango Media, LLC*, No. CV 17-07534 AG (SSx), 2018 WL 4502492, at *3 (C.D. Cal. Sept. 11, 2018).

Patent eligibility under 35 U.S.C. § 101 is a question of law that may be addressed through a Rule 12(b)(6) motion.  *See, e.g.*, *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373 (Fed. Cir. 2016); *Secure Mail Sols. LLC v. Universal Wilde, Inc.*, 169 F. Supp. 3d 1039, 1045 (C.D. Cal. 2016).  When a complaint asserts a patent directed to ineligible subject matter, it fails to state a plausible claim for relief and should be dismissed.  *See, e.g.*, *OIP Techs. Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1360 (Fed. Cir. 2015); *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1345 (Fed. Cir. 2014).

Although patent eligibility "may contain underlying questions of fact," district courts have dismissed cases based on a § 101 analysis and the Federal Circuit has affirmed district courts' conclusions of patent ineligibility at the pleadings stage.  *Automated Tracking Sols., LLC v. Coca-Cola Co.*, 723 F. App'x 989, 992, 995 (Fed. Cir. 2018) (affirming grant of judgment on the pleadings of patent ineligibility because the complaint and specification failed to support the contention that the patent involved a developing technology instead of well-understood, routine, and conventional systems); *see also Maxon, LLC v. Funai Corp., Inc.*, 726 F. App'x 797, 798 (Fed. Cir. 2018) (affirming the district court's dismissal of the case after finding the asserted patents invalid under § 101); *TS Patents LLC v. Yahoo! Inc.*, 731 F. App'x 978, 979 (Fed. Cir. 2018) (same), *petition for reh'g en banc denied*, No. 2017-2625 (Fed. Cir. Sept. 25, 2018);

-4-

1    *Cellspin Soft, Inc. v. Fitbit, Inc.*, 316 F. Supp. 3d 1138, 1153-54 (N.D. Cal. 2018)

2    (granting motion to dismiss because patentee's assertion of the inventiveness of the

3    claimed technology was unsupported by the specification); *Uniloc USA, Inc. v.*

4    *HTC Am., Inc.*, No. C17-1558JLR, 2018 WL 3008870, at *9 (W.D. Wash. June 15,

5    2018) ("Simply stating that the claimed method and systems were not conventional

6    at the time of the patent application does not make it so, and the court need not

7    credit such conclusory statements."). Importantly, a patentee cannot manufacture

8    "inventive concepts" that the inventors did not recognize and disclose in the

9    specification. *See, e.g.*, *TriPlay, Inc. v. WhatsApp Inc.*, C.A. No. 13–1703–LPS–

10   CJB, 2018 WL 1479027, at *11 (D. Del. Mar. 27, 2018) (granting motion to

11   dismiss where specification did not disclose function of allegedly inventive concept

12   or its advantage over prior art); *Consumer 2.0, Inc. v. Tenant Turner, Inc.*, 343 F.

13   Supp. 3d 581, 593 (E.D. Va. 2018) ("[I]t is not evident from the '590 patent

14   specifications that there is any inventive feature used in an unconventional

15   manner."); *Cellular Commc'ns Equip. LLC v. AT&T Inc.*, No. 2:15-cv-00576-RWS-

16   RSP, 2017 WL 2984074, at *4, n.1 (E.D. Tex. June 27, 2017) (rejecting argument

17   that a feature was inventive where the specification did not "reflect such an insight"

18   or explain how the feature was an advance over prior art).

19   **IV. ARGUMENT**[1]

20       **A. The '609 Patent Claims Patent-Ineligible Subject Matter**

21       The '609 patent claims the abstract idea of measuring elapsed time. To

22   implement this idea, the '609 patent claims the use of an "applet"—a generic

23   program—that measures how long a user has been watching a video and transmits

24   data about the elapsed time across the Internet to a remote general-purpose

25   computer, which stores the elapsed time. Because the '609 patent uses routine and

26

27   [1] For the Court's benefit, Netflix notes that the '609 patent and '005 patent-specific

28   arguments herein are similar to those included in the Hulu and Roku motions to
     dismiss filed on March 18, 2019.

-5-

conventional computer functions to implement its abstract idea, it is ineligible for patent protection.

The '609 patent issued on March 26, 2013 with one independent claim and two dependent claims.  It describes the purported invention as a method for using a timer applet to track a user's streaming of a "digital media presentation" displayed on a web page.  '609 patent at 2:14-34 ("Summary of the Preferred Embodiments").  The purported utility of the claimed subject matter is in the data collected from tracking the user, which the patent alleges "allows for an increasing scale of payments for advertising displayed on a given page correspondent to how long a viewer or viewers remain, or typically remain, on that particular page or like pages." *Id*. at 7:49-50.  Notably, the claims are silent as to this alleged benefit.

Claim 1, the '609 patent's only independent claim, is representative. *See* McKeever Decl., Ex. A (hereinafter, "Claim Listing") at 1.

### 1.    The '609 Patent is Directed to an Abstract Idea

Measuring elapsed time is an ancient concept.  Historical records in athletic contests, such as the fastest person to run a mile, have been kept since the mid-1800s, when timekeepers would record the measurements by hand.  Even measuring and recording elapsed media playback time—which is all that Uniloc claims—remains old.  VCRs had timers that showed how long viewers were watching videotapes.  Home-recordable videotape labels contained multiple lines so that any user could record start and stop times for programs and access them more easily.

When audiovisual content reached the digital realm, people still timed playback:  a timer display on a CD player or laserdisc player measured and told the user how much time had been spent listening to music or watching movies.  When general purpose computers began to serve as media centers, the media programs—such as Windows Media Player or Apple QuickTime—timed user playback of local media, such as songs and videos.  The '609 patent claims only this concept.

-6-

Measuring elapsed time is a fundamentally abstract idea.  Measuring elapsed time of a generic technology—digital media presentations, *i.e.*, video—or within a generic technological environment—such as one requiring sending, receiving, and storing the measurements—is insufficient to make the claims non-abstract.  *E.g.*, *Intellectual Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1330 (Fed. Cir. 2017) ("[A]s we have previously observed, an abstract idea does not become nonabstract by limiting the invention to a particular field of use or technological environment, such as the Internet.") (citation and internal quotation marks omitted); *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 612-13 (Fed. Cir. 2016) (storing data in organized manner held abstract).

## 2.   The '609 Patent Lacks an Inventive Concept
### a.   Claim 1

Nothing in the limitations of claim 1, viewed individually or as an ordered combination, provides an inventive concept sufficient to transform the abstract idea into a patent-eligible invention.  The crux of the '609 patent is the use of a generic timing program to measure elapsed time viewing a program, and then receiving and recording the resulting data.  This is nothing more than implementing an ancient human practice into a generic computer environment, and it is accordingly ineligible for patenting.  "[T]he mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice*, 573 U.S. at 223.

The Federal Circuit's decision in *Ultramercial, Inc. v. Hulu, LLC* is squarely on point.  772 F.3d 709 (Fed. Cir. 2014).  The *Ultramercial* court analyzed an eleven-element claim, also coincidentally related to monetizing viewable content, that included the steps of:

(1) receiving copyrighted media from a content provider; (2) selecting an ad after consulting an activity log to determine whether the ad has been played less than a certain number of times; (3) offering the media

-7-

for sale on the Internet; (4) restricting public access to the media; (5) offering the media to the consumer in exchange for watching the selected ad; (6) receiving a request to view the ad from the consumer; (7) facilitating display of the ad; (8) allowing the consumer access to the media; (9) allowing the consumer access to the media if the ad is interactive; (10) updating the activity log; and (11) receiving payment from the sponsor of the ad.

*Id.* at 712.

Despite the "degree of particularity" added by some of the limitations—something absent from the '609 patent claims—the Federal Circuit nevertheless found the claim unpatentable as abstract and non-inventive. *Id.* at 717. Most of the steps were directed to the abstract idea of "showing an advertisement before delivering free content," and the remaining steps were either "insignificant data-gathering steps" (such as consulting and updating an activity log) or "insignificant pre-solution activity" (such as restricting public access). *Id.* at 715-16. Moreover, the steps were "not tied to any particular novel machine or apparatus, only a general purpose computer." *Id.* at 716.

Just as in *Ultramercial*, claim 1 of the '609 patent recites an abstract idea along with a host of limitations requiring insignificant and conventional activities for practicing the idea, all of which are performed with general-purpose computers. *See* Claim Listing at 1. The system: (1) sends a webpage that causes a digital media presentation to be streamed (elements [a], [f]); (2) sends identifying data to the user's computer to allow the timed user to be identified by the system (element [b]); (3) sends a timing applet to the user's computer (element [c]); (4) receives identifying data from the user's computer at periodic intervals (element [d]); (5) stores the received data, all of which together indicates how long the user viewed the digital media presentation (elements [e], [g], [h]). The use of webpages, streaming video, transmitting data, running an applet, receiving data, and storing

data:  every one of these elements is a conventional computer activity or a routine data-gathering step and thus cannot constitute an inventive concept.  *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015) (where claims recited "well-understood, routine conventional activit[ies]," either by requiring conventional computer activities or routine data-gathering steps … the claim elements fail "to 'transform' the claimed abstract idea into a patent-eligible application") (citing *Alice*, 134 S. Ct at 2359, 2357).  The transfer of data between computers to implement the abstract idea of timing elapsed media playback is simply not inventive.  *Ultramercial*, 772 F.3d at 717 ("[T]he transfer of content between computers is merely what computers do and does not change the analysis.").

Notably, the '609 patent concedes that the majority of its limitations are conventional.  *See, e.g.*, '609 patent at 5:22-25 (streaming and downloading data to a webpage are conventional), 7:38-41 (multiple types of identifier data are known and conventional), 12:1-5 (streaming and downloading video is conventional).  Storing data "indicative of an amount of time the digital media presentation data is streamed" ('609 patent at 14:40-45) is substantively similar to the "updating an activity log" step that the Federal Circuit held was an "insignificant data-gathering step . . . add[ing] nothing of practical significance to the underlying abstract idea" and thus non-inventive.  *Ultramercial*, 772 F.3d at 716; *see also Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1262 (Fed. Cir. 2016) (generic storing and transmitting limitations did not provide an inventive concept).  As for the timing "applet," not only does the specification fail to describe it as inventive, but it fails to provide any direction as to how it would be implemented, simply assuming that the skilled artisan would already understand how to do so.  *See, e.g.*, '609 patent at 12:67-13:4 ("'Applet,' as used herein, generally refers to a software component that runs in the context of another program, in the case of page 900 of FIG. 9, a web browser. Such an applet may typically used [*sic*] to perform a

-9-

1  specific function or task, usually narrow in scope.").

2  **b.    Claims 2 & 3**

3    Claims 2 and 3 fare no better than Claim 1.  Claim 2 adds to claim 1 the

4  requirement that "storing comprises incrementing a stored value dependently upon

5  the receiving."  "Incrementing" is nothing more than "adding" and is a

6  fundamental, routine, and conventional operation whether performed by a human or

7  a general-purpose computer.  The claimed "incrementing" thus adds nothing non-

8  abstract or non-conventional to the claim.

9    Claim 3 then adds to claim 2 that "the received data is indicative of a

10  temporal cycle passing."  The specification does not define a "temporal cycle," but

11  it does make clear that the timing applet can periodically send data to the server,

12  after which "a value indicative of the number of cycles that have passed in database

13  32 may be incremented each time the data is received."  '609 patent at 13:36-42.

14  Put simply, claim 3 allows for the generic timer to send periodic updates, after

15  which the database increments the stored time value as in claim 2.  This is nothing

16  more than transmitting data and storing updated data, and it too is routine and

17  conventional.  *Affinity Labs*, 838 F.3d at 1262 (generic storing and transmitting

18  limitations did not provide an inventive concept).

19  **3.    Uniloc Has Failed to Plead Facts Sufficient to Defeat a**
   **Motion to Dismiss the '609 Patent**

20
    Uniloc fails as a matter of law to demonstrate the presence of anything

21  inventive in the claims of the '609 patent.  As discussed above, the claims focus on

22  measuring the elapsed time of a media presentation.  But the patent has little to say

23  about solving any technological problems with measuring elapsed playback.

24  Rather, both the Complaint and the specification describe the problems posed by

25  prior art search engines, and suggest that the claims may provide some nebulous

26  advantages over them with puffery regarding "tabular tracking" and the recording

27  of advertising views.  FAC ¶¶ 84-88.  But the claims of the '609 patent contain no

28

-10-

search or retrieval functionality for the user.  *Compare* FAC ¶ 86 (identifying search engine inability to use digital media tracking to update search results) and '609 patent at 1:55-2:9 (Background of the Invention) *with* '609 patent at 14:17-49 (claims 1-3, which include no discussion of search functionality, let alone changes in search results based on tracking).  Nor does the Complaint provide an explanation for the apparent non-sequitur of its connection of search engine indexing and language parsing with user tracking, or explain how tracking a user's viewing of a presentation could affect a search engine's results.  FAC ¶¶ 85-86.  Similarly, the Complaint describes the patent as providing a "technological solution to the problem" (FAC ¶ 88)—but the claim itself provides no technical solution or novel arrangement to solve any problem, instead relying on generic components performing their routine and conventional functions.  *See, e.g.*, '609 patent at 4:33-35 (forms and/or content of a webpage can be "conventionally achieved in the pertinent arts"); 4:57-62 (a user may request a webpage from a server, and a server may provide a webpage, "in a conventional manner."); 5:22-25 (a selected presentation can be streamed or downloaded to a webpage "in a conventional manner"); 7:38-41 (a user may be identified by "any of a number of known methodologies"); 12:1-5 (a webpage can be utilized to playback a selected presentation "in a conventional manner").  The same is true with respect to Uniloc's emphasis of the specification's sparse description of "tabular tracking" and the purported ability to record what ads a viewer watched or listened to, and for how long—the claims say nothing of such an ability.  Even if the patent's specification adequately disclosed an inventive concept in the specification—it does not—the failure of the claims to embody that concept is fatal.  *See, e.g.*, *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1338 ("The main problem that [patentee] cannot overcome is that the *claim*—as opposed to something purportedly described in the specification—is missing an inventive concept); *see also Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed. Cir. 2016) ("The § 101

-11-

1    inquiry must focus on the language of the Asserted Claims themselves.").

2         Uniloc is attempting to manufacture a fact issue where none exists.  Uniloc

3    baldly asserts what "a person of ordinary skill in the art would understand";  for

4    instance, Uniloc asserts that such a person would understand the advancement that a

5    user can stream a presentation between different computers "from the same point

6    no matter where the user left off"—but that is unrelated to the digital media

7    tracking problems described in the patent.  (FAC ¶ 91).  Similarly, Uniloc asserts

8    that a skilled artisan would understand that "that claim 1 of the '609 patent is

9    directed to a method for providing and tracking digital media presentations using a

10   web page, identifier data and a timer applet originating at a first computer system to

11   track and responsively stream a digital media presentation from a second computer

12   system that can be viewed by a user at the user's computer," which it describes as

13   "an inventive concept" without explaining *why* it is inventive (*id.*).  These

14   assertions should be given no weight, as they are conclusory statements with no

15   factual support.  *Uniloc USA*, 2018 WL 3008870, at *9 (conclusory statements that

16   elements are not conventional need not be credited by the court).  Regardless,

17   patent eligibility is a question of law, and on the facts of this case a finding on

18   ineligibility is proper.  *Voit Techs., LLC v. Del-Ton, Inc.*, No. 2018-1536, 2019 WL

19   495163, at *1 (Fed. Cir. Feb. 8, 2019) (patent eligibility is a question of law that

20   *may* or *may not* contain underlying issue of fact); *see also Iqbal*, 556 U.S. at 678;

21   *Fayer*, 649 F.3d at 1064.

22        **B.    The '229 Patent Claims Patent-Ineligible Subject Matter**

23        The '229 patent relates to the field of encoding and decoding image data,

24   which the Federal Circuit has deemed abstract.  *See RecogniCorp, LLC v. Nintendo*

25   *Co., Ltd.*, 855 F.3d 1322, 1326 (Fed. Cir. 2017) (referring to "standard encoding

26   and decoding" as "an abstract concept long utilized to transmit information").[2]  The

27   _____

28        [2] *See also id.* ("Morse code, ordering food at a fast food restaurant via a

-12-

'229 patent is ineligible because it is directed to the abstract idea of chunking an image.  A well-known technique, chunking involves grouping items into larger chunks and then dealing with them at the chunk level.  It is a technique commonly used to reduce complexity by dealing with items at a higher level of abstraction.  In the electoral college, for example, electoral votes are chunked by state, with the entire chunk (in most states) going to the candidate that won the state.  Because the claims of the '229 patent are directed to this abstract idea and lack anything inventive to transform them into patent-eligible subject matter, they are invalid under Section 101.

In its scant description—the '229 patent includes one figure which is a flowchart and about two columns describing the purported inventions, *id.* at 1:65-3:40—the patent explains that it relies on a "conventional" video encoding technique wherein background portions of a video are separated from foreground portions to allow the two portions to be encoded separately:

> One of ***conventional*** video compression techniques for reducing the size of information is an object-based coding technique, by which an image is divided into a back ground [*sic*] region and a foreground object region and each region is encoded separately. That is, the input image signal is divided into the background region having little motion and changes, and the foreground object region having large motion and changes, wherein the input image signal includes a plurality of video frames and each frame includes a multiplicity of macro-blocks, each macroblock having 16×16 pixels.

'229 patent at 1:21-37 (emphasis added).

The '229 patent describes a simple variation on this conventional

numbering system, and Paul Reverse's 'one if by land, two if by sea' signaling system all exemplify encoding at once end and decoding at the other end.").

-13-

segmentation technique.  Rather than dividing the image at the pixel level, the patent proposes chunking the image into blocks and then separating the blocks into foreground and background regions.

Claim 1 of the '229 patent is the only independent claim.  *See* Claim Listing at 2.  Though long, virtually everything in the claim describes the admittedly "conventional" background-foreground segmentation technique.  *See, e.g.*, *Ultramercial,* 772 F.3d at 716 ("[E]ach of those eleven steps merely instructs the practitioner to implement the abstract idea with 'routine, conventional activit[ies],' which is insufficient to transform the patent-ineligible abstract idea into patent-eligible subject matter.") (citation omitted).  The only purportedly inventive requirement is that segmentation be performed on "a macroblock-by-macroblock basis," *i.e.*, that image chunks rather than pixels be separated into background and foreground regions.  Claim 1 is the only claim asserted or discussed in Uniloc's complaint.  FAC ¶¶ 49-51, 56-58, 62, 76.

### 1.    The '229 Patent is Directed to an Abstract Idea

The '229 patent is directed to the abstract idea of chunking an image.  Chunking portions that make up a whole is abstract.  In addition to the electoral college, each member of congress represents a chunk of voters grouped into an electoral district.  Tennis is scored by games and sets which are chunks of a match regardless of how many individual points were won or lost.  The list goes on.

The '229 patent simply applies the widely used technique to images to simplify the processing of the image.  The first limitation of claim 1 requires that background-foreground segmentation be done at a "macroblock-by-macroblock basis."  '229 patent at 3:48-51.  The specification states that segmentation is performed "***not by pixel unit but by 16x16 pixels-sized macroblock unit.***"  *Id.* at 2:5-6 (emphasis added); *see also id.* at 2:9-12 (at first step in "present invention" the "video is to be divided into an background region and a foreground object region ***by unit of macroblock***") (emphasis added).  It is this block-level rather than

-14-

pixel-level segmentation that is the "focus of the claimed advance over the prior art." *Compare id.* at 1:51-63 (critiquing pixel-level processing) *with id.* at 1:64-2:8 (Summary of Invention: emphasizing block-level processing). *See Affinity Labs v. DIRECTV*, 838 F.3d at 1257 ("The 'abstract idea' step of the inquiry calls upon us to look at the 'focus of the claimed advance over the prior art' to determine if the claim's 'character as a whole' is directed to excluded subject matter.").

Claim 1 of the '229 patent is representative as the other claims are similar and directed to the same abstract idea. *See Cleveland Clinic*, 859 F.3d at 1360.

### 2.    The '229 Patent Lacks an Inventive Concept
#### a.    Claim 1

Whether considered individually or together, the steps of Claim 1 do not provide an inventive concept that transforms the abstract idea into a patent-eligible invention. Just the opposite:  the claim recites steps that the patent acknowledges as "conventional" or "well-known techniques" to practice the abstract idea. Moreover, the claim not only permits but expressly requires using "known coding techniques" to perform certain steps. "Claim limitations that recite 'conventional, routine and well understood applications in the art' are insufficient to 'supply an inventive concept.'" *BSG Tech LLC, v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018); *see also Mayo*, 566 U.S. at 73 (addition of "well-understood, routine, conventional activity previously engaged in by researchers in the field" is insufficient).

The first step of claim 1 (step 'a') is the segmentation step.  The "Description of the Prior Art" section of the patent describes background-foreground segmentation as "conventional." '229 patent at 1:21-37.  The patent also admits that "using a difference" to perform segmentation is "conventional":

> A ***conventional*** region division technique divides the image signal in a pixel unit by ***use of temporal change information or spatial change information*** of the image signal.  That is, the video is divided into a

-15-

1    plurality of the regions according ***to*** estimating the ***brightness-change***

2    in the pixel unit, thereby, each pixel is estimated as a back ground [sic]

3    region or an object region.

4    *Id.* at 1:41-48 (emphasis added).

5        Although step 'a' requires segmentation to be performed on "a macroblock-

6    by-macroblock basis," this merely reflects the abstract idea of chunking, which

7    cannot itself supply the inventive concept.  *See BSG Tech*, 899 F.3d at 1290 ("It has

8    been clear since *Alice* that a claimed invention's use of the ineligible concept to

9    which it is directed cannot supply the inventive concept that renders the invention

10    'significantly more' than that ineligible concept.").  Further, the patent describes

11    macroblock-based segmentation techniques as "well-known":

12    An appropriate selection among ***the well-known techniques for such a***

13    ***region division technique is utilized***, i.e., macroblock-based region

14    division technique and a background mosaicking technique is utilized

15    for the present invention.

16    *Id.* at 2:49-53 (emphasis added).  The notion that processing video data at the

17    macroblock-level was "inventive" is further refuted by another patent asserted by

18    Uniloc in this case—the '005 patent, which has an earlier priority date and

19    describes block-based encoding techniques as standardized.  *See, e.g.*, '005 patent

20    at 2:17-20 ("In general, the encoding of an MPEG video data stream requires a

21    number of steps. The first of these steps consists of partitioning each picture into

22    macroblocks.").  The standardized motion estimation techniques described in the

23    '005 patent are performed at the macroblock-level.  *Id.* at 2:20-48; *see also, e.g.*,

24    McKeever Decl., Ex. F (MPEG-1, 1993) at pg. v ("The algorithm then uses block-

25    based motion compensation to reduce the temporal redundancy.").

26        Step 'b' expressly requires use of a "known coding technique" when

27    generating shape information for the object (*i.e.*, foreground) region.  The patent's

28    discussion of "conventional" segmentation notes that it includes such shape coding.

-16-

'229 patent at 1:34-37 ("In addition, shape information representing each divided region is separately coded and transmitted in order to reconstruct the image signal at a receive side.").

Step 'c' expressly requires "using a selected known coding technique" to encode the object (*i.e.*, foreground) blocks. Again, the patent's description of the well-known segmentation technique notes that it involves "conventional" coding of macroblocks. *Id.* at 1:31-34 ("Each divided region is coded by using a **conventional** macro block-based image coding technique, such as known discrete cosine transformation and quantization techniques.") (emphasis added).

Step 'd' and the "wherein …" clause that further qualifies that step address the encoding of the background region. Specifically, these elements require that background blocks are only encoded where the block is sufficiently different than the corresponding block in the previous frame. Otherwise, the block is not encoded and the block from the previous frame is "reuse[d]." This is merely a feature of the conventional segmentation approach. Indeed, the patent's discussion of conventional segmentation explains that "the background region ha[s] little motion and changes, [whereas] the foreground object region ha[s] large motion and changes." *Id.* at 1:25-28.

Lastly, step 'e' requires generic "storing or transmitting" of the data produced by the previously recited steps which is clearly not inventive. *See, e.g., Affinity Labs v. DIRECTV*, 838 F.3d at 1262 (generic storing and transmitting limitations did not provide an inventive concept); *Two-Way Media*, 874 F.3d at 1340-41 (data transmission limitations merely required "conventional computer and network components operating according to their ordinary functions" and thus were not inventive); *BuySAFE v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) ("That a computer receives and sends the information over a network—with no further specification—is not even arguably inventive.").

### 3. Uniloc Fails to Plead Facts Sufficient to Defeat a Motion to Dismiss the '229 Patent

In the Complaint, Uniloc paraphrases many of the limitations in claim 1 and asserts that they comprise an "inventive concept." FAC ¶ 59. Simply labeling the steps "inventive" does not make them so, and the Court should not credit this legal conclusion couched as a factual allegation. *Iqbal*, 556 U.S. at 678; *see also Uniloc USA*, 2018 WL 3008870, at *9 (rejecting conclusory allegations in complaint). As discussed, the claims of the '229 patent recite nothing more than the abstract idea of chunking an image and conventional steps for performing segmentation using "known coding techniques."

Uniloc also alleges that the purported invention of the '229 patent "lead[s] to lower bit rates … and more efficient compression of video images, which is very important in the storage and transmission of digital images." FAC ¶ 56. But these allegations are conclusory and unsupported. Nothing in the '229 patent backs up Uniloc's assertion that the ultimate bitrate will be lower than with pixel-level segmentation.

### C. The '005 Patent Claims Patent-Ineligible Subject Matter

The '005 patent relates to the field of encoding data which the Federal Circuit deemed abstract in *RecogniCorp*. The '005 patent is ineligible because it attempts to claim the idea of concurrent motion estimation. Importantly, the '005 patent does not purport to cover motion estimation itself, which it admits was well-known and standardized. Concurrent motion estimation is abstract, however, and Uniloc's attempt to claim that idea regardless of how the idea is implemented is impermissible. Patents are not awarded for abstract ideas untethered from a concrete invention that actually achieves them. The claims of the '005 patent add nothing inventive to the abstract idea itself and are therefore ineligible.

Motion estimation is a well-known video compression technique that was used for decades before the '005 patent. '005 patent at 1:40-55; 2:49-54. Indeed,

-18-

the patent references "conventional methods of motion estimation." *Id.* at 3:54.
Motion estimation helps reduce the data required to represent a frame in a video by
identifying similar portions from another frame for reuse. '005 patent at 2:49-54.
The technique involves comparing pixels in one picture "to those of a previously
transmitted reference" picture to find a match. *Id.* at 1:45-51.

In motion estimation, there are different "prediction modes" which
correspond to different approaches for finding matches in a reference picture. *Id.* at
3:7-24. The MPEG-2 standard defines six prediction modes. *Id.* at 3:7-9; 4:22-26.
The '005 patent admits that "[c]urrently known methods of motion coding allow the
use of different prediction modes," and that it is often possible to determine in
advance which mode will produce the best match. *Id.* at 3:12-20. The patent asserts
that sometimes the optimal prediction mode is not known, however, and trying
multiple prediction modes is impractical because each one requires substantial time
to try. *Id.* at 3:15-24. The '005 patent proposes a simple but abstract solution—
perform motion estimation for multiple prediction modes ***concurrently***.

### 1.     The '005 Patent is Directed to an Abstract Idea

The '005 claims are directed to the abstract idea of concurrent motion
estimation. The '005 patent's purported "advance over the prior art" is not motion
estimation which was known, but rather ***concurrent*** motion estimation. *See Affinity
Labs v. DIRECTV*, 838 F.3d at 1257 ("The 'abstract idea' step of the inquiry calls
upon us to look at the 'focus of the claimed advance over the prior art' to determine
if the claim's 'character as a whole' is directed to excluded subject matter."). The
motion estimation itself is secondary and preferably follows established standards.
'005 patent at Abstract ("In one embodiment, the method and device are capable of
concurrently determining [sic] performing motion estimation in each of the six
different possible prediction modes specified by the MPEG-2 standard.").

The abstractness of the '005 claims is underscored by the absence of
anything that restricts how the claimed concurrent motion estimation is achieved.

-19-

The '005 patent claims the abstract idea of concurrent motion estimation as a result, rather than claiming a particular means of achieving that result. *See Two-Way Media,* 874 F.3d at 1329 ("Under *Alice* step one, … [w]e look to whether the claims in the patent focus on a specific means or method, or are instead directed to a result or effect that itself is the abstract idea and merely invokes generic processes and machinery.") (citation omitted); *Elec. Power Grp.*, 830 F.3d at 1356 (noting the "important common-sense distinction between ends sought and particular means of achieving them, between desired results (functions) and particular ways of achieving (performing) them").

In *Interval Licensing LLC v. AOL, Inc.*, the Federal Circuit recently affirmed an order granting judgment on the pleadings where the claims-at-issue were similarly directed to an idea rather than a concrete solution. 896 F.3d 1335 (Fed. Cir. 2018). There, the patent claimed "an attention manager [that] makes use of 'unused capacity' of a display device, by displaying content in that unused capacity." *Id.* at 1338 (citing patent) (internal quotation marks omitted). At *Alice* step one, the court noted that "[s]tanding alone, the act of providing someone an additional set of information without disrupting the ongoing provision of an initial set of information is an abstract idea." *Id.* at 1344. The court mentioned the familiar example of a breaking news ticker on the bottom of a television screen. *Id.* That the claims recited an "attention manager" did not make them non-abstract where the term "simply demands the production of a desired result (non-interfering display of two information sets) without any limitation on how to produce that result." *Id.* at 1345. The court deemed the claim abstract in part because "the claim in effect encompasses all solutions" for producing the abstract result. *Id.*

Similarly, in *Affinity Labs v. DIRECTV*, the Federal Circuit affirmed dismissal of a patent with claims directed to the abstract "concept of providing out-of-region access to regional broadcast content." 838 F.3d at 1258. The court noted traditional practices such as mailing local newspapers to other areas or using

-20-

satellites to broadcast sporting events.  *Id.*  Just as in *Interval Licensing*, the court emphasized that the claims were directed to the idea rather than a concrete solution that achieved the idea.  *Id.*  Although the abstract idea could "be implemented in myriad ways[,]" the court found "nothing in claim 1 that is directed to ***how to implement*** out-of-region broadcasting on a cellular telephone.  Rather, the claim is drawn to the idea itself." *Id.* at 1258 (emphasis added); *see also id.* at 1262 ("[The patent] claims the general concept of out-of-region delivery of broadcast content …, without offering any technological means of effecting that concept.").

The '005 claims—for example, claim 41—are similarly result-oriented and abstract.  *See* Claim Listing at 3.  The first step of claim 41 generically recites the bare, abstract idea of "concurrently performing motion estimation."  Nothing limits ***how*** concurrent motion estimation is achieved.  The other steps simply recite selecting and using the best match identified by the concurrent motion estimation step.  "Instead of claiming a solution for producing [concurrent motion estimation], the claim in effect encompasses all solutions." *Interval Licensing*, 896 F.3d at 1345.  The claim "is untethered to any specific or concrete way of implementing" concurrent motion estimation.  *Affinity Labs v. DIRECTV*, 838 F.3d at 1258; *see also Clarilogic, Inc. v. FormFree Holdings Corp.*, 681 F. App'x 950, 954 (Fed. Cir. 2017) ("[A] method for collection, analysis, and generation of information reports, ***where the claims are not limited to how*** the collected information is analyzed or reformed, ***is the height of abstraction***.") (emphasis added).

## 2.     The '005 Patent Lacks an Inventive Concept

Where a claim is directed to an abstract idea, it must include an "inventive concept, *i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [abstract idea] itself." *Alice*, 573 U.S. at 217 (quoting *Mayo*, 566 U.S. at 72-73) (internal quotation marks omitted).  The '005 claims include no such inventive concept.

#### a.     Claim 41

Claim 41 recites four steps, the first of which recites the abstract idea itself—concurrent motion estimation.[3]  The abstract idea itself cannot supply the inventive concept, however.  *See BSG Tech*, 899 F.3d at 1290 (Fed. Cir. 2018) ("It has been clear since *Alice* that a claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept.").

Although the abstract idea here involves motion estimation, motion estimation was routine and conventional when the patent was filed.  Indeed, Uniloc acknowledges that motion estimation was standardized via MPEG-1 and MPEG-2 which the '005 patent describes as the "most widely accepted international standards" related to video coding and which are incorporated by reference into the patent specification.  FAC ¶¶ 20-21; '005 patent at 1:21-19; *see also, e.g.*, McKeever Decl., Ex. F (MPEG-1 standard) at pgs. 78-85, Ex. G (MPEG-2 standard) at pgs. 73-87 (both describing motion estimation).  Claim 41 would cover performing two strictly conventional modes of motion estimation as long as they were performed concurrently.  Claim 42, which depends from claim 41, specifies that "the prediction modes include at least a plurality of the prediction modes specified in the MPEG-2 standard."  Performing motion estimation in accord with "the most widely accepted" video coding standard is not inventive.  *See Mayo*, 566 U.S. at 73 ("well-understood, routine, conventional activity previously engaged in by researchers in the field" does not provide "inventive concept").

The three remaining steps of claim 41 are each conventional and simply describe selecting and using the best result obtained via concurrent motion

---

[3] Motion estimation is also abstract.  The Federal Circuit has "treated analyzing information by steps people go through in their minds, or by mathematical algorithms, without more, as essentially mental processes within the abstract-idea category."  *Elec. Power Grp.*, 830 F.3d at 1354.

estimation.  The "comparing" and "selecting" steps require comparing the results (*i.e.*, the matches) produced by different prediction modes and selecting the best match.  Conventional motion estimation for a single prediction mode involves the same comparing and selecting steps.  *See* '005 patent at 2:54-67 (error metrics for each possible match are compared and match with the lowest value is selected).  Such conventional comparison and selection are insufficient to transform make the claim patent-eligible.  The "generating" step is also routine as the motion vector is simply derived from the location of the best match just as in conventional motion estimation.  *Id.* at 2:64-3:4 (the "horizontal and vertical positions [of the best match] relative to the current macroblock … constitute the motion vector"); *see also id.* at 2:28-31 (noting that the "motion vector(s) … corresponds to the position of the closest-matching macroblock … in the anchor picture(s)").  "[S]imply appending conventional steps, specified at a high level of generality, to … abstract ideas cannot make those … ideas patentable."  *Mayo*, 566 U.S. at 82; *accord. Ultramercial*, 772 F.3d at 716.

### b.   Claim 1

The discussion above focused on claim 41 which is representative.  Other claims are similar and linked to the same abstract idea of concurrent motion estimation.  *See Cleveland Clinic*, 859 F.3d at 1360.  For example, Uniloc's complaint asserts claim 1 which is substantially similar to claim 41.  *See* Claim Listing at 3.  Just like claim 41, claim 1 recites the idea of "concurrently performing motion estimation …."  Although the "comparing …" step in claim 1 recites some additional language about comparing pixels, that language is redundant because it just describes how to perform conventional motion estimation by making comparisons between arrays of pixels:

> For all MPEG-2 prediction modes, the fundamental technique of
> motion estimation consists of comparing the current macroblock with a
> given 16-by-16 pixel array in the anchor picture, estimating the quality

of the match according to the specified metric, and repeating this
procedure for every such 16-by-16 pixel array located within the
search range.

'005 patent at 2:49-54.

Just as in claim 41, the remaining steps in claim 1 amount to picking the best
matching block and generating a motion vector for it, both of which are steps
performed during conventional motion estimation.  *See id.* at 2:64-3:1.

### 3.    Uniloc Fails to Plead Facts Sufficient to Defeat a Motion to Dismiss the '005 Patent

Uniloc again falls short in its efforts to manufacture a factual dispute in
hopes of surviving a motion to dismiss.  First, Uniloc suggests that concurrent
motion estimation is itself the inventive concept.  FAC ¶ 30.  But concurrent motion
estimation is the abstract idea, and therefore cannot by definition supply the
inventive concept.  *See BSG Tech*, 899 F.3d at 1290.  Further, concurrent
motion estimation cannot provide the inventive concept here where the claims do not even
specify *how* concurrent motion estimation is achieved.  "[W]hen a claim directed to
an abstract idea 'contains no restriction on how the result is accomplished … [and]
[t]he mechanism … is not described, although this is stated to be the essential
invention[,]' then the claim is not patent-eligible."  *Intellectual Ventures I LLC v.
Symantec Corp.*, 838 F.3d 1307, 1316 (Fed. Cir. 2016) (citation omitted).

To the extent Uniloc means to suggest that the *idea* of "concurrent motion
estimation" was new or nonobvious at the time the '005 patent was filed, that point,
even if true, is irrelevant:

> We may assume that the techniques claimed are "[g]roundbreaking,
> innovative, or even brilliant," but that is not enough for eligibility.  …
> The claims here are ineligible because their innovation is an innovation
> in ineligible subject matter.  …  [T]he advance lies entirely in the realm
> of abstract ideas, with no plausibly alleged innovation in the non-abstract

-24-

application realm. An advance of that nature is ineligible for patenting. *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1163 (Fed. Cir. 2018).

Uniloc also repeatedly alleges that the purportedly inventive solution of the '005 patent "is simpler, faster, and less expensive than prior art technology." FAC at ¶¶ 14, 29, 30. As an initial matter, the Court need not credit such conclusory allegations. *See, e.g., Uniloc USA*, 2018 WL 3008870 at *9. Moreover, because the '005 claims recite only the result of concurrent motion estimation as opposed to a specific method for achieving that result, the claims do not ensure that the patented method will be simpler, faster, or less expensive. The claims would cover a very complex, very slow, and very expensive approach as long as it achieved concurrent motion estimation.

Finally, Uniloc implies that determining the optimum prediction mode during motion estimation is inventive. *See, e.g.,* FAC at 25 ("concurrently determining the optimal prediction mode while performing motion estimation"). On the contrary, comparing results produced by different prediction modes to determine the optimum prediction mode was routine. Indeed, Uniloc acknowledges it was known that different prediction modes could be run in sequence and then the results simply compared to identify the optimum prediction mode. FAC ¶¶ 23-24; *see also, e.g.*, McKeever Decl., Ex. F (MPEG-1, 1993) at pg. 101-102 (Section "D.6.5.3.1 Selecting motion-compensation mode", describing picking "the best of the three possible prediction modes" based on the one that generated the least error). The '005 patent merely adds the abstract idea of doing the motion estimation concurrently and regardless of how concurrency is achieved.

## V.   CONCLUSION

Because the claims of the patents-in-suit fail both steps of the *Alice* framework, Netflix respectfully requests that the Court dismiss Uniloc's Complaint with prejudice.

NOTICE OF MOTION AND MOTION TO DISMISS FAC

1

2    DATED:  March 18, 2019                    **PERKINS COIE LLP**

3

4                                              By: */s/ Patrick J. McKeever*
                                                   Patrick J. McKeever
5
                                               Attorneys for Defendant
6                                              NETFLIX, INC.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>CERTIFICATE OF SERVICE</u>

2

The undersigned hereby certifies that a true and correct copy of the above

3

and foregoing document has been served on March 18, 2019 to all counsel of record

4

who are deemed to have consented to electronic service via the Court's CM/ECF

5

system.

6

Any other counsel of record will be served by electronic mail.

7

8

By: <u>*/s/ Patrick J. McKeever*</u>

9

Patrick J. McKeever

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION TO DISMISS FAC